Mr. Justice Walker delivered the opinion of the Court. The complainant’s claim to the equitable interposition of the court of chancery rests, 1st, upon the ground that he is a creditor of defendant, Royster, who confederated with defendant, Anthony, and fraudulently conveyed certain property to him in violation of the rights of complainant and other creditors; 2d, that he has claim to the property as a purchaser from Royster for a valuable consideration, and is entitled, on that ground also, to have such alleged fraudulent sale set aside. Our first inquiry will be whether the complainant has presented a case which entitles him to be heard in a court of equity. Whatever may be the effect of fraud upon a contract as between the parties themselves, in consideration of their infamy, or public policy, there can be no question but that creditors and others, whose rights are affected thereby, may cause such fraudulent contract to be set aside, that their rights so affected may be protected and preserved. The right to this equitable interposition is based upon three principal grounds; 1st, that the party complaining has such rights ; 2d, that they are affected by such fraudulent contract; 3d, that the contract is in fact fraudulent. And first in regard to the rights to be affected. They must be definite, ascertained rights by the ordinary tribunals appointed for that purpose. Thus it has been held that it is not sufficient for a creditor, when he comes into a court of equity to have a fraudulent sale set aside and the property subjected to the payment of his debt, that he should simply show an outstanding debt liquidated or unliquidated, but he must also show that he has prosecuted such claim to judgment, so that it may be judicially ascertained that he has a certain specific amount due him; nor is that sufficient. He must show that process has been regularly issued thereon and returned nulla bona; for until this is done, it is not ascertained that his rights are necessarily affected by such transfer. Or if the complainant would avoid the force of this rule he should show such equitable circumstances as will relieve him from its application, making his case an exception to the rule. Reference to a few cases in which this question has been decided, may serve to illustrate this proposition. In the case of Hulbert vs. Grant, (4 Mon. 581,) Grant, a creditor, filed his bill against Hulbert to set aside certain conveyances of land and negroes, which he alleged were fraudulent and void. He charged in his bill that he held three unsatisfied debts against Hulbert, two of which he had prosecuted in a court of law to judgment. The court, in delivering its opinion upon this point, said : “ As to these two claims, it is not charged in the bill or shown in the record, that executions were issued on the j udg-ments or returned unsatisfied. Now this rule is so well settled that a creditor must not only obtain a judgment but issue out execution and procure its return in a case where his demand is purely legal, before he can apply to a court of equity for redress against fraudulent encumbrances on the estate of the debtor, that we need not now discuss the subject or review the cases where the principle has been adjudicated”; citing as authority for this opinion 1 Mon. 106, 281. 2 J. Ch. R. 283. 4 id. 671, 682, 687, and concluded by saying “ that the claims of complainant founded on these two judgments must fail.” The third debt set up by complainant was that he had bought land of Hulbert, which had been lost by paramount title in ejectment; that he had not been evicted, nor had he sued on the breach of warranty, nor obtained judgment thereon at law, because it was useless as Hulbert had protected himself by the fraudulent conveyances complained of and had no other estate on which execution could operate. The same court, in delivering the opinion on this allegation said, page 582 : “ It is clear, according to this statement of the case, the complainant could not maintain his bill on this claim. His remedy, if any he had, was purely legal, and he was bound to resort to a court of law to enforce it. And if on the other claims, which his assignors had pursued to judgment at law, he would not sustain his bill because they had not gone the whole length of execution, a fortiori, he could not come into equity when he had not even begun his action at law.” The case of McKinley et al. vs. Combs et al. (1 Mon. 106,) is a still stronger case and comes fully up to the point at issue. The court in that case said : “ The doctrine is incontrovertibly established that a creditor whose claim is of a purely legal character and therefore cognizable in a court of law, must, in order to place himself in an attitude to take advantage of the deed on the ground of its being fraudulent, sue at law and recover judgment and issue execution thereon. One of the claims set up by complainant, is for a considerable sum upon a note and open account upon which no suit had been prosecuted at law. These were claims of a purely legal character and cognizable in a court of law, and there is no fact alleged which conduces to show that there was any thing to hinder or obstruct a recovery thereon of a judgment at law. The decree, so far as relates to these claims, was therefore clearly erroneous.” These authorities to the fullest extent sustain us in the opinion, that, in a case like that before us, where the creditor seeks to set aside a contract as fraudulent against creditors, such creditor should not only show a certain and adjudicated claim, placing his claim to the character of creditor beyond controversy, but he should not even then capriciously disturb the contracts between third persons be they ever so fraudulent; but shall pursue his remedy upon such judgment to final satisfaction, if there be property of the defendants found sufficient to pay said debt, which is free from such fraudulent encumbrance. The reason and propriety of this rule is obvious. It is altogether premature on his part to ask of the chancellor to set aside a contract for the purpose of enabling him to procure satisfaction of a debt, until he has first had his claim adjudicated by a competent tribunal. So that, should the prayer of his bill be granted, he would have a right at once to avail himself of the benefits conferred by the decree. Until his claim is so adjudicated however, even admitting the transfer of the property to have been fraudulent, he has no right to complain of wrong done to him. The injury, if any, is conditional upon an event which may never happen. He may never obtain such judgment. Ordinarily there is no reason why he should desert the common law courts and ask a court of chancery first to pass upon a preliminary question, upon which his equitable rights are made to depend, and if extraordinary circumstances exist which make his an exception to the general rule, they should be set forth in the bill. Nor is it less obvious that the purchaser as between himself and the vendor has a perfect right to retain his purchase unmolested unless it shall become necessary to rescind the contract for the benefit of creditors or others whose rights have been affected by such fraudulent contract. It is therefore but just that the creditor should show also that he has failed in the ordinary mode of collection to make his debt and that independent of the property so conveyed in fraud of his rights there is not sufficient to satisfy such debt. For if there is other property sufficient for that purpose it is an act of capricious intermeddling with the contracts of others to permit him to interfere and set it aside. As between the vendee and the vendor as we have already remarked the contract is valid: and he who comes to rescind it and take from the possession of the vendee the property so purchased, on the ground that he is a creditor whose rights are affected by such transfer, must show that he has a debt adjudged to be due him, and that, after having resorted to the ordinary process for that purpose, he has failed to make his debt; or he must by distinct averments and allegations, show such circumstances as will excuse him for having failed to do so. This, it will be perceived, the complainant in this instance has failed to do. The debt, which he claims, has never been adjudicated upon, nor have any steps been taken to ascertain whether there is or not other propei’ty out of which this debt might be made, nor is any reason shown for his having failed to do so. It is true the bill charges that Royster is insolvent, but this, we have said, is not sufficient. The complainant also relies upon his purchase of the property from Royster, and insists that upon the ground of his being a purchaser for a valuable consideration he has a right to maintain this suit to have the alleged fraudulent conveyance set aside and his title to the property confirmed. The purchase thus relied upon, as shown from the complainant’s bill, appears to have been made after defendants, Anthony and Percifull, had instituted suit against defendant, Royster, upon their prior deeds for the purpose of subjecting the property to the payment of their debts, and after process had been served and the slaves taken by virtue of an order of the chancellor and placed in the hands of a receiver; of all which as well as of the existence of the registered deeds the complainant was bound to take notice. This then was a purchase made whilst the property was in suit and actually in custody of the law. Under these circumstances-the doctrine applicable to purchasespendenielite applies, and under it there can be no doubt that the purchaser takes nothing by his contract, not even in a case where he pays full value and has no actual notice of the pendency of the suit — as in the case of Sorrell vs. Carpenter, (2 P. Williams 482,) where the defendant pui’chased an estate pendente lite from one Ligo after subpcena served on Ligo and before answer for full value, and without any notice of the complainant’s title or actual notice of the suit: Lord Ch. King, in delivering his opinion, said : “ That it was a very hard case to set such a purchase aside, yet such was the rule.” Lord Hardwicke, in the case of Garth vs. Ward, (2 Atk. 174,) held “ that a purchaser pendente lile was bound by the decree in the suit: the pendency of the suit was itself notice.” Lord Camden afterwards enforced the same rule in the case of Walker vs. Smallwood (Amb. 676.) He said : “I hold it as a general rule that an alienation pending a suit is void.” This doctrine is equally well settled in America, as will be seen in the cases of Murray vs. Ballou, 1 J. C. R.. 580. Murray vs. Lylburn, 2 J. C. R. 445. Murray vs. Blatchford, 1 Wend. 593. Sweet vs. Dorr, 11 Mass. 549, and the authorities there cited. From the views already expressed it follows that the complainant was neither a creditor nor a purchaser within the meaning of the statute, but stood towards the parties charged to have contracted in fraud as a mere stranger and as such it is very clear had no right to interfere with the contract made between them. It is contended, however, that this objection comes too late, that the defendants, by answering the bill and progressing to final hearing have waived their right to object to the jurisdiction of the court or the sufficiency of the equity contained in the bill. True, as a matter of practice it is usually best when the bill is defective to present the defect to the court by demurrer, and for this obvious reason that it is not every ground of demurrer that can be taken advantage of on the final hearing of the cause, no more than it would be cause in arrest of judgment at common law, for each ground of demurrer which might have been well assigned to the declaration. But then there are vital defects touching the merits of the cause of action in either chancery or common law proceedings, which though not formally presented before, will not be overlooked upon the final hearing. In chancery there is a practice allowable and for many purposes quite convenient, which is, to raise and reserve the question of law in the answer, thereby making the answer a response to the facts of the case whilst it questions the sufficiency of the facts to afford equitable redress. This practice is more allowable when it is remembered that, where there is cause of demurrer, which may not go to the whole equity of the bill, it becomes necessary to answer and demur to the bill at the same time, thereby involving a question not unfrequently difficult in practice to determine, the precise point at which the answer and demurrer meet, so as to occupy distinct ground, and at the same time form a response to the whole bill. Daniel Ch. Pl. & Pr. vol. 2 Page 819, fully sustains this practice. He says: “with respect to claiming the same benefit by answer that the defendant would have been entitled to if he had demurred to the bill, or plead the matter alleged in his answer in bar, it is to be noticed that it is only at the hearing of the cause that any such benefit can be insisted upon ; but that at the hearing of the cause the defendant will in general be entitled to the same advantage of this mode of defence that he would have had if he had adopted the more concise mode of defence by demurring or pleading.” In the case of Anderson vs. Roberts, (18 J. R. 535) the court says : “ the defendants have not precluded themselves from making the objection they have insisted in their answer on the trial and verdict at law as precluding the respondents.” In the case of Kendrick vs. Arnold, (4 Bibb 235,) where a bill was filed alleging that complainants were bona fide purchasers at public auction of certain slaves, that subsequently the slaves had been seized by the sheriff and a sale was about being forced contrary to law; to which bill the defendant, instead of demurring, answered denying the validity of defendant’s purchase; the court decided that as there was no sufficient equity in the bill it should, at the final hearing, have been dismissed. These authorities abundantly show that where the complainant presents a case clearly cognizable in a court of law, or where defendant answers the allegations of the bill reserving the questions of law to be considered on the final hearing of the case— which the defendant has done in this instance — should the court on final hearing be of opinion that there is not a case in equity made out, such as will entitle the complainantto relief, it should at once dismiss the bill. For as the allegations themselves are not sufficient to uphold a decree for the complainant, there could be neither necessity nor propriety in proceeding to investigate the facts in proof — their office being to sustain not supply omission or aid defective pleadings. Entertaining these views it becomes wholly unnecessary to examine the evidence in regard to fraud, since we have decided that the complainant has not shown himself to be either creditor or purchaser under such circumstances as will permit him to question the alleged fraud, but must from his own showing be held as a stranger; and as such will not be heard to complain of the fraudulent conduct of third persons, in whose conduct he has failed to show himself interested. There was no error in the decision of the circuit court dismissing the bill, so far as Anthony was concerned: and although an interlocutory decree was rendered against Royster and Percifull, who failed to answer, it will be perceived that the whole charge of fraud was directed at Anthony, and the decree sought to be rendered was to affect him. In the deed, made for the benefit of Percifull as security, it is not pretended that he was not such, or that he should not have been thus secured. Royster was introduced as a mere creature confederated with Anthony, but who had no interest to be affected by the decree. It is evident therefore that the defence of Anthony was, in effect, a defence to the whole bill. But suppose it not to have been such, the interlocutory decree supplied no defect in the allegations of the bill; it merely admitted the truth thereof by failing to respond. The allegations so admitted do not in our opinion warrant a decree against them. The bill was properly dismissed as to them also. Let the decree be affirmed.